[File No. 6797]

DAVID W. GOODMAN et al., Petitioners, v. FRED CHRISTEN-SEN, Ben Koester, and James Kennelly, the Board of County Commissioners and Board of Equalization in and for the County of Kidder, in the State of North Dakota, Respondents.

(300 NW 460)

Opinion filed October 17, 1941.  Rehearing denied October 22, 1941

*R. L. Phelps* and *Knauf & Knauf,* for petitioners.

*Arne Vinje,* State's Attorney, and *T. A. Thompson,* for respond-ents.

*Roy K. Redetzke,* amicus curiae.

MORRIS, J. This is an original proceeding in the supreme court. The petitioners seek a supervisory writ directing the district court to take certain proceedings and determine certain issues under the provisions of chapter 269, ND Session Laws 1941. On July 9, 1941, the petitioners presented to the Board of County Commissioners of Kidder county their respective petitions as individuals wherein they sought the redetermination of valuations for tax purposes of lands owned by the various petitioners. The applications were denied by the county board, whereupon an appeal was taken to the district court. Upon that appeal, the proceedings initiated by the separate petitions were consolidated into one action. The case was heard by the district court on September 22, 1941.

When the petitioners called their first witness, the Board of County Commissioners of Kidder county made a motion for dismissal of the proceedings upon various grounds, including the following: "That the petition filed herein does not state facts sufficient to justify the Court in assuming jurisdiction of this case or granting any relief to petitioners or any of them because the petition is based on the 1941 tax assessment and levy. The 1941 assessment was completed by the local asses-

sors and by the local boards before July 1, 1941. The emergency clause set forth in the printed bill was defeated in the House, and Senate Bill No. 195, printed as chapter 269, Laws of 1941, did not become effective until July 1, 1941. It expressly provides that it shall not be retroactive, but is prospective only, so that the law could not and does not apply to 1941 assessments as made by assessors and local boards who had met and acted prior to July 1, 1941."

In addition to the foregoing grounds for the motion for dismissal the respondents urged various constitutional objections to the validity of chapter 269.

The trial judge granted the motion and in the order for dismissal states that, "the Petition herein does not state facts sufficient to justify the court in assuming jurisdiction of this case or granting any relief to Petitioners or any of them, because the Petition is based upon the 1941 tax assessment and levy; and that the 1941 assessment was completed by the local assessors and by the local boards of review prior to July 1st, 1941; that chapter 269 of the Laws of 1941, upon which the cause of action of the Petitioners is founded did not become operative and did not take effect until July 1st, 1941."

The petitioners now seek in this court a supervisory writ directing the trial court to proceed to hear the appeal upon its merits and determine the full and true value of the various tracts of property involved. Upon a hearing in this court to determine whether such writ should issue, the state's attorney of Kidder county, representing the county commissioners, moved to quash the proceedings in this court. Among the grounds urged are, "That by the express terms of chapter 269, ND Session Laws 1941, the holding of a district court under said act is not subject to review," and "That for this court, now, to disturb the order of the district court would be an idle act, because under the express terms of chapter 269, Laws of 1941, no judgment or order disturbing an assessment for 1941 after October first, 1941, could be made."

Section 10 of the act in question provides: "That every decision of the district judge rendered pursuant to the provisions of this act shall be final and shall not be subject to review by appeal." It was evidently the intention of the legislature to make the decision of the district judge final as to those matters that he was required to determine

under the provisions of chapter 269. It is urged by the petitioners that the trial court in dismissing the proceedings and failing to grant judgment did not comply with the statute nor perform his duty under it. Section 86 of the North Dakota Constitution confers upon the supreme court general superintending control over all inferior courts under such regulations and limitations as may be prescribed by the legislature. Section 7339, ND Comp. Laws 1913, authorizes the supreme court to issue such original and remedial writs as may be necessary to exercise its superintending control over inferior courts. State ex rel. Jacobson v. District Ct. 68 ND 211, 277 NW 843; State ex rel. Shafer v. Lowe, 54 ND 637, 210 NW 501. Section 87 of the Constitution confers upon the supreme court original jurisdiction to issue certain prerogative writs. If, as charged by the petitioners, the district court has failed to perform his duty as district judge under the statute, this court is not deprived of superintending control by the provision in chapter 269 making the decision of the district judge final.

Section 10 of chapter 269 also provides that the district judge, designated to preside at the hearing of appeals from Boards of County Commissioners "shall hear, try and determine all issues of fact and law presented by such appeals de novo, and shall decide all appeals pending in said court for determination before the first day of October." It is urged by the state's attorney of Kidder county in support of his motion to dismiss these proceedings, that after the first day of October the district court is without power to enter any judgment disturbing the assessments involved in the appeals, and that this court may not now order the district court to proceed to judgment in this proceeding because the date upon which any judgment may be entered herein by the district court has passed.

The record discloses that the court proceeded to a hearing on September 22 and made the determination contained in his order of dismissal on September 30. If that order was made without authority and in contravention of his duty under the statute, this court may order him to proceed even though the proceeding may result in a judgment entered after October first. It is the duty of the court to comply with the statute and to make his determination as directed therein. The statute however does not go so far as to deprive him of jurisdiction if he fails to comply with the statutory direction as to time. That the court had

312

jurisdiction in the first instance to hear the appeal is not questioned. Should it now become proper to direct the district court to proceed, this court may do so. The time set by the statute neither deprives the trial court nor this court of the power to proceed to hear and determine the questions in this litigation in a speedy and orderly manner. The motion to quash is denied.

We will now consider whether the action of the trial court in dismissing the proceedings was a violation of his duty under the statute as urged by the petitioners. The basic question with reference to this point is whether chapter 269 is applicable to tax assessments made during the year 1941. If it is not applicable, the district court properly dismissed the proceedings.

In this state, true value has for many years been consistently maintained as the fundamental basis for tax assessments. Werner v. Riebe, 70 ND 533, 296 NW 422. As a matter of practice, however, many assessments were not made upon that basis in recent years. This is particularly true of farm lands. In 1939, the legislative assembly of that year attempted to, in some measure, bring erroneous assessment practices in line with the long prevailing theory of true value. By chapter 225, ND Session Laws 1939, tax charges against property valued by local assessors in excess of what those charges would have been had the assessments been limited to the true value in money were declared null and void. It provided procedure for determining true value and provided for relief from excessive assessments. That statute was before this court three times, in Werner v. Riebe, supra; Murray v. Mutschelknaus, 70 ND 1, 291 NW 118 and State ex rel. Strutz v. Huber, 69 ND 788, 291 NW 126. The 1939 Act was repealed by chapter 269, ND Session Laws 1941. The latter enactment provided in section one thereof "That all property in this state subject to taxation upon an ad valorem basis shall be assessed only at its full and true value in money; and that all assessments of any taxable property in excess of the full and true value in money shall be null and void." The 1941 Act, like its predecessor, reaffirmed true value as the basis of taxation and declared assessments in excess thereof null and void. The new act, however, changed entirely the procedure under which relief for excessive assessments might be had and the limitations of time applicable thereto.

Although the 1939 Act is specifically repealed by chapter 269, ND Session Laws 1941, it is contended by the petitioners that the fundamental law remains the same and that only rules of procedure have been changed. It is argued that the two acts must be construed together to the end that the right to relief from excessive valuations thereunder is afforded against the assessments made each year including those of 1941. An analysis of these acts and the rules of statutory construction applicable thereto does not sustain this contention.

The 1941 Act became effective July 1, 1941. As originally introduced, it contained an emergency clause and had it passed by the two-thirds majority in each legislative house required by the Constitution, it would have become effective upon its approval by the governor on March 18, 1941. The act was undoubtedly drawn with the expectation that it would be passed as an emergency measure and approved in time so that all of the steps prescribed thereunder might be taken with regard to 1941 assessments. In this respect the expectations of the proponents of the bill were not realized. The failure of the emergency clause to pass both houses resulted in the effective date of the act being delayed until July 1. We must take the act as we find it and as it was passed by the legislative assembly. The portions of the act bearing on the point under consideration are as follows:

§ 1. "That each year the county auditor shall cause to be published (in) the official county newspaper, for two successive weeks the first publication to be not earlier than May 1st and the last publication not later than May 20th, a notice to the effect that proceedings for the equalization of taxes will be taken by the several local Equalization Boards on the second Monday in June and that each taxpayer has a right, on or before July 10th, to make application to the Board of County Commissioners for a review of the assessment made by the assessor and equalized by such local board, and has a right to appeal to the District Court from the decision of such Board of County Commissioners and that if he fails to make such application the assessment against his property and the valuation thereof for taxing purposes will be final."

§ 2. "Applications, for what purpose made. That after the local boards of review have performed the duties prescribed by § 2133 of the Compiled Laws of North Dakota for the year 1913 applications

may be made to the board of county commissioners: (1) to review and re-determine the full and true value in money of any individual property or of any class of property within any taxing district; and (2) to review and equalize the assessments between the several assessment districts of the county."

§ 21. "Waiver of rights and remedies by taxpayer. That every taxpayer who feels aggrieved by and dissatisfied with any valuations of his taxable property shall appear before the boards of review of the local taxing districts or before the board of county commissioners while acting in the capacity of a local board of review or of equalization at the time when said boards are required by law to review valuations of individual or classes of property and equalize such valuations in the several assessment districts of the county, to protest and object to any assessments or the equalization thereof which he claims to be unjust and excessive, and if denied, such taxpayer must make and file his application for relief authorized by the provisions of this Act and appeal therefrom within the time prescribed therefor; and unless such taxpayer shall avail himself of the rights and remedies conferred by this Act he shall be deemed to have waived and forfeited any and all rights and remedies which he may have in law or in equity for a review or reduction of any valuations of his taxable property on the ground that such valuations are unjustly excessive or that they exceed the full and true value of his property in money."

§ 23. "Act prospective. The provisions of this Act shall operate prospectively only, and shall not apply to or affect any assessments of taxable property made for the years 1939 and 1940."

Section 2133, N. D. Comp. Laws 1913, requires local boards of review in organized townships, incorporated villages and cities to meet on the second Monday in June to examine and review the assessments made by the assessors. They are required to complete the equalization within ten days. Persons considering themselves aggrieved may present their complaints to the local boards of review at the June meeting. Section 2138, N. D. Comp. Laws 1913, provides that the Board of County Commissioners at its regular meeting in July shall act as a local board of review with respect to unorganized territory within the

county and shall in relation thereto perform the duties prescribed by § 2133.

A study of §§ 2 and 21 of chapter 269, N. D. Session Laws 1941, discloses that it must operate in connection with §§ 2133 and 2138, N. D. Comp. Laws 1913 and that no relief can be granted to individual applicants or petitioners under chapter 269 who have not first complied with whichever section of the 1913 Compiled Laws is applicable to the review of their assessments by local boards of review. If that property is located in organized territory, relief must first be sought by the local boards of review at the June meeting.

In support of the argument that the 1941 Act must be construed as a continuation of the 1939 statute the petitioners urge the applicability of the rule that when the provisions of a repealing statute are identical or practically identical with the provisions of the statute repealed those provisions will be considered as continuing in force without interruption. They cite Golden Valley County v. Lundin, 52 ND 420, 203 NW 317 and Gull River Lumber Co. v. Lee, 7 ND 135, 73 NW 430. This rule is not applicable to the relief sought by the petitioners. It is stated in Gull River Lumber Co. v. Lee, supra, that "in order to work a continuation of such provisions, they must be practically identical in the two statutes." It is not sufficient that the statutes deal with the same general subject matter or that they afford similar relief.

One marked point of difference between the two statutes under consideration lies in the reviewing boards before which proceedings are first instituted. As we have just pointed out, protest must first be made by individual applicants or petitioners under the 1941 Law before local boards of review whereas under chapter 225, N. D. Session Laws 1939, "The failure to appear before any board of equalization or the failure on the part of any person interested in any such property to do or perform any other act or thing shall not preclude such owner or person interested in said real estate from having the full merit of his individual petition heard and determined." (§ 4.) Thus, it appears that the 1939 Act ignored local boards of review while its successor made appearances before such boards, the foundation upon which the whole procedural structure rests. The latter act is far from being iden-

tical with the former, in fact, dissimilarity is so marked that it approaches inconsistency.

As introduced in the Senate, chapter 269, being Senate Bill 195, contained an emergency clause. Under the provisions of § 67 of the North Dakota Constitution, a measure, in order to be declared an emergency measure, must receive a favorable vote of two thirds of the members present and voting in each house. An emergency measure takes effect from and after its passage and approval by the governor. If the bill passes in either house by less than the required two thirds, it takes effect July 1 after the close of the session. State ex rel. Sorlie v. Steen, 55 ND 239, 212 NW 843. On final roll call in the house of representatives, the vote was sixty ayes and forty-six nays, five not voting. On page 1262 of the House Journal, the action of that body is thus noted "so the bill passed and the title was agreed to and the emergency clause was declared lost." The result of this action was to fix the effective date of the act as of July 1, 1941, with the result that certain important and indispensable steps required by the act could not be taken thereunder with respect to 1941 taxes. The act by its terms is declared to operate prospectively only. It purports in both the title and the body of the act to prescribe the procedure by which review may be obtained and relief secured under it. The county auditor is required to publish notice to the effect that proceedings for the equalization of taxes will be taken by the local equalization boards on the second Monday in June. By local equalization boards is undoubtedly meant those boards designated under the provisions of § 2133, N. D. Comp. Laws 1913. Before relief can be granted with regard to property located and assessed in organized territory, the grievances of dissatisfied taxpayers must be presented to these local boards. Since the law did not go into effect until July 1, none of this preliminary procedure could be had under it.

It is significant, in determining the legislative intention, that after the emergency clause failed of passage no attempt was made to reconsider and amend the measure so as to make all of its provisions available with reference to 1941 assessments. This is indicative of an intention that relief under the act might be available only with regard to those assessments concerning which the procedure therein provided

might be fully available. This procedure is not available with reference to 1941 taxes. The steps prescribed by the act both with reference to the duty of the county auditor as to publishing notice and the requirement as to the appearance of aggrieved taxpayers before local boards of equalization cannot be complied with until 1942.

It is contended that some of the petitioners own property in unorganized territory and at least with reference to the property so located the procedure is available after July 1 since the Board of County Commissioners acts as a local board of review with respect to unorganized territory at its July meeting. If this contention be valid, it means that the legislature made available relief from assessments in unorganized territory which was not available throughout the rest of the state. The legislature undoubtedly intended to create an act uniform in its availability at least in so far as the location of property is concerned.

A similar contention might be made with regard to taxpayers who may have protested against 1941 assessments before local boards of review in organized territory under the provisions of § 2133, Comp. Laws. Protests under § 2133 had to be made in June. If any taxpayers did so protest, they did not do so pursuant to any notice given or procedure authorized under chapter 269, for that act did not become effective until July 1. The law being prospective in its operation the legislature could not have intended to confer, by retrospective recognition, special privileges upon those taxpayers who performed certain acts prior to the effective date of the law even though those acts seemingly conformed to procedural requirements that later became a part of the law in force after July 1. Chapter 269 is not prospective as to some seekers of relief and retrospective as to others. All steps prescribed by that chapter are such that they must be taken after the law becomes effective. These steps cannot be taken with reference to 1941 assessments. The law did not go into effect piecemeal. It does not apply to any 1941 alleged excessive assessments and none of the petitioners may have relief thereunder. The trial court properly dismissed the proceedings. No writ will issue.

BURR, Ch. J., and CHRISTIANSON, BURKE, and NUESSLE, JJ., concur.

MORRIS, J. (on petition for rehearing). The petitioners vigorously

318

assert that we have misconstrued chapter 269, N. D. Session Laws 1941, in holding that appearance before local boards of review or before the county commissioners when acting as local boards of review with respect to unorganized territory is a condition precedent to the right to apply to boards of county commissioners for relief under that chapter. After further considering this point, we are still agreed that the statute is susceptible of no other construction than the one we have given to it.

Under § 1, the county auditor is required to give notice in the manner therein prescribed "to the effect that proceedings for the equalization of taxes will be taken by the several local Equalization Boards on the second Monday in June and that each taxpayer has a right, on or before July 10th, to make application to the Board of County Commissioners for a review of the assessment made by the *assessor and equalized by such local board.*" (Italics supplied.)

Section 2 provides, "That after the local boards of review have performed the duties prescribed by § 2133 of the Compiled Laws of North Dakota for the year 1913 applications may be made to the board of county commissioners:"

Section 21 requires that applicants for relief "shall appear before the boards of review of the local taxing districts or before the board of county commissioners while acting in the capacity of a local board of review or of equalization and unless such taxpayer shall avail himself of the rights and remedies conferred by this Act he shall be deemed to have waived and forfeited any and all rights and remedies which he may have in law or in equity for a review or reduction of any valuations of his taxable property on the ground that such valuations are unjustly excessive or that they exceed the full and true value of his property in money."

The petitioners argue that under the provisions of § 21 they may petition the Board of County Commissioners for relief without first seeking relief before local boards of review. They assert that they are given the alternative of appearing before the local boards first or ignoring the local boards and petitioning the Boards of County Commissioners in the first instance. The language of § 21 is sufficiently ambiguous to lend some support to the petitioners' argument were it not for the other portions of the act above quoted. When the entire act is taken

into consideration, we have no doubt but that the legislature intended that anyone seeking relief under chapter 269 must first appear before that board of review to which his appeal for relief might be made under § 2133 or § 2138, N. D. Comp. Laws 1913. In other words, he must start with the lowest rung of the procedural ladder. Failing to do that, he may take no other steps.

The petitioners also contend that the decision should be modified at least as to property located in unorganized territory and with respect to which the boards of county commissioners act as local boards of review. This contention is disposed of in the main opinion by our determination that the legislature intended to and did create a uniform act. We will not presume that the legislature in dealing with relief from assessments for general taxes sought to confer special privileges with respect to property located in unorganized territory.

Grave questions concerning the constitutionality of chapter 269 have been suggested. These questions, however, were not pressed either on oral argument or in the briefs of the respondents. Since we hold that this act does not afford relief to the petitioners under its terms, the controversy here presented is disposed of by statutory construction and we do not determine the questions of constitutionality.

"A court will not assume to pass upon a constitutional question unless the question is properly before it and this does not occur unless the constitutional question must be decided in order to determine the controversy before the court." State ex rel. Stutsman v. Light, 68 ND 513, 281 NW 777.

See also Magnuson v. Breher, 69 ND 197, 284 NW 853; State ex rel. Strutz v. Huber, 69 ND 788, 291 NW 126. Rehearing denied.

BURR, Ch. J., and BURKE, NUESSLE, and CHRISTIANSON, JJ., concur.