PRESENT: All the Justices

FRANCES BOYNTON, ET AL.

OPINION BY
v.    Record No. 051041               JUSTICE G. STEVEN AGEE
                                         January 13, 2006

JERRY W. KILGORE, ATTORNEY
GENERAL OF THE COMMONWEALTH OF
VIRGINIA, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

Frances Boynton and eleven other former employees of the

Office of the Attorney General (collectively "the former

employees") appeal from the judgment of the Circuit Court of the

City of Richmond, which sustained a demurrer to their amended

motion for judgment. At issue in this appeal is whether the

Virginia Personnel Act, Code § 2.2-2900 et seq. ("VPA"), applies

to employees of the Office of the Attorney General so that the

twelve involuntarily separated employees qualify for severance

benefits under the Workforce Transition Act of 1995, Code § 2.2-

3201 et seq. ("WTA"). Because we find that the Virginia

Personnel Act does not cover employees of the Office of the

Attorney General, we will affirm the trial court's judgment.

I.    BACKGROUND AND PROCEEDINGS BELOW

The former employees were full-time employees of the Office

of the Attorney General until October 18, 2002, when they were

involuntarily separated from employment due to budget

1

constraints.  Upon termination of employment, the former employees sought severance benefits provided under the WTA.

The Attorney General and the Comptroller of the Commonwealth denied their request, contending the former employees were ineligible for WTA severance benefits because they are not included in the list of employees eligible for benefits as set forth in Code § 2.2-3202.[1]

After exhausting their administrative remedies, the former employees filed a motion for judgment against the Attorney General and the Comptroller in the Circuit Court of the City of Richmond, seeking WTA severance benefits.  The trial court sustained the demurrer of the Attorney General and the Comptroller, but permitted the former employees to file an amended motion for judgment.  In the amended motion for judgment, the former employees allege they are eligible for WTA severance benefits under Code § 2.2-3202(A)(i) because they were full-time Commonwealth employees "covered by the Virginia Personnel Act."

The Attorney General and the Comptroller again demurred, arguing that the former employees are exempt from the VPA under

---

[1] The former employees were awarded five weeks of severance pay under other provisions of state law, but were denied all benefits under the WTA.

Code § 2.2-2905(1) and therefore cannot be included within Code § 2.2-3202(A)(i).

The trial court sustained the demurrer in a letter opinion dated January 28, 2005, which was incorporated into an order dated February 24, 2005 that dismissed the amended motion for judgment with prejudice. The trial court's letter opinion held that "the autonomy of the Attorney General in personnel matters" would be disrupted if the VPA covered employees of the Office of the Attorney General and "that without coverage of the VPA extending to them, plaintiffs are not eligible to the severance benefits allowed by the WTA."

We awarded the former employees this appeal.

## II.  ANALYSIS

The former employees raise six assignments of error, which all center on a single dispositive issue: whether the provisions of Code § 2.2-2905(1), which exempt from the VPA all "[o]fficers and employees for whom the Constitution specifically directs the manner of selection," includes employees of the Office of the Attorney General.[2]  The parties agree that if the foregoing statute includes employees of the Office of the Attorney

---

[2] Code § 2.2-2905 states, in relevant part: "The provisions of this chapter shall not apply to: . . . Officers and employees for whom the Constitution specifically directs the manner of selection."

3

General, then the former employees are not covered by the VPA and are thus ineligible for the WTA benefits claimed.

The WTA provides that certain employees of the Commonwealth who are involuntarily separated from employment are eligible for transitional severance benefits. Code § 2.2-3201. Code § 2.2-3202 then lists those employees entitled to the WTA severance benefits. Employees of the Office of the Attorney General are not specifically named in the statutory list.[3] The former employees contend, however, that Code § 2.2-3202(A)(i) includes them because each was a "full-time employee of the Commonwealth (i) whose position is covered by the Virginia Personnel Act (§ 2.2-2900 et seq.)."

The former employees argue they are covered by the VPA because the plain language of Code § 2.2-2905(1) lists those employees of the Commonwealth who are exempt from the VPA, and they are not among those exempted; therefore, they must be included within the VPA's coverage. In particular, the former

_____

[3] Code § 2.2-3202(A) states, in relevant part:

Any full-time employee of the Commonwealth (i) whose position is covered by the Virginia Personnel Act (§ 2.2-2900 et seq.) . . . and (a) who, on or after January 1, 1995, is involuntarily separated . . . and (b) for whom reemployment with the Commonwealth is not possible because there is no available position for which the employee is qualified or the position offered to the employee requires relocation or a reduction in salary, shall be eligible, under the

4

employees contend they are not within the exemption group asserted by the Attorney General in Code § 2.2-2905(1) because they are neither officers nor employees "for whom the Constitution specifically directs the manner of selection" under the plain language of the statute.

The former employees note that the Constitution of Virginia makes no reference to employees of the Office of the Attorney General and the Attorney General cites to none. Because courts are obliged to apply the plain meaning of a statute unless doing so results in a "manifest absurdity" or irreconcilable statutory conflict, they argue that the trial court erred in failing to follow the plain language of the statute when it sustained the demurrer. The former employees aver that as the plain language of Code § 2.2-2905(1) does not exempt them from the VPA, and no manifest absurdity or statutory conflict exists to require an alternate construction of the statute's text, they must be covered by the VPA and therefore entitled to WTA severance benefits under Code § 2.2-3202(A)(i).

Anticipating the argument of the Attorney General and the Comptroller, the former employees further posit that VPA coverage of employees of the Office of the Attorney General for purposes of receiving WTA severance benefits does not create a

conditions specified, for the transitional severance benefit conferred by this chapter.

conflict between the statutory authority given to the Governor and the Attorney General as to employees of the Office of the Attorney General. This is so, they contend, because involuntarily severed employees are no longer employees and therefore no longer subject to the Attorney General's control. Consequently, they argue that the facts of this case do not create a conflict in the respective authority of the Governor and the Attorney General; therefore, that issue need not be addressed in the case at bar. If a conflict between the Governor's authority and the Attorney General's were to arise in another context of VPA coverage, the former employees contend the courts could then determine how to harmonize the statutes in that future case.

In response, the Attorney General[4] argues that employees of the Office of the Attorney General, including the former employees, are not covered by the VPA because the exemption under Code § 2.2-2905(1) for officers "for whom the Constitution specifically directs the manner of selection" includes individuals working under such an officer's control. Thus, because the Attorney General is exempt from the VPA under Code

---

[4] On appeal, the Attorney General represents not only the Attorney General, but also the Comptroller of the Commonwealth; reference to the "Attorney General" thus encompasses both parties where the context would so indicate.

§ 2.2-2905(1), individuals whose positions are controlled by the Attorney General are necessarily exempt as well.[5]

The Attorney General contends that to hold otherwise would establish conflicting authority over personnel decisions between the Governor and the Attorney General, and a direct and irreconcilable conflict between several statutes. Under Code § 2.2-103(B), the Governor is the "Chief Personnel Officer of the Commonwealth," and is charged with "direct[ing] the execution of" the VPA. The VPA establishes a "system of personnel administration" for Commonwealth employees.[6] Code § 2.2-2900. It states, inter alia, that "[n]o establishment of a position or rate of pay, and no change in rate of pay shall become effective except on order of the appointing authority and approval by the Governor." Code § 2.2-2901(C).

While the Governor has final authority over personnel under the foregoing provisions of the VPA, Code §§ 2.2-501 and –502 give the Attorney General final authority over the personnel of the Office of the Attorney General.[7] The Attorney General thus

---

[5] The Constitution of Virginia sets out the manner of selecting the Attorney General in Article V, § 15.

[6] The VPA contains various provisions on a wide range of subjects, including protecting the right of Commonwealth employees to use tobacco products, Code § 2.2-2902, and creating employment preferences for veterans. Code § 2.2-2903.

[7] Code § 2.2-501 states, in relevant part: "The Attorney General shall appoint a chief deputy Attorney General and may appoint the necessary deputy Attorneys General and assistant Attorneys General and fix their salaries within the limitation

contends that if the VPA applies to employees of that Office, as asserted by the former employees, both the Governor and the Attorney General would have the same and contemporaneous authority over employees of the Office of the Attorney General. To avoid this conflict, the Attorney General argues that the proper construction of the VPA exemption in Code § 2.2-2905(1) includes not only the Attorney General, but also the employees under his control.

We find the Attorney General's arguments persuasive.

There is no statutory basis to support the contention that the former employees could be covered by the VPA solely for the purpose of qualifying for WTA severance benefits under Code § 2.2-3202(A)(i) as former employees, but not covered as VPA employees for other purposes. Consequently, contrary to the former employees' position, the VPA's applicability to all employees of the Office of the Attorney General must be examined in the case at bar. Although this case ultimately addresses eligibility for WTA severance benefits, our decision on that issue necessarily derives from resolving the predicate issue of

---

of the funds provided for the purpose in the general appropriation act."

Code § 2.2-502 states: "The Attorney General may appoint such persons as he deems necessary for the efficient conduct of his office, and apportion, out of the appropriation for his office, such salaries among such persons as he deems proper . . . ."

8

whether employees of the Office of the Attorney General are exempt from the VPA under Code § 2.2-2905(1).

Because statutory interpretation presents a pure question of law, it is subject to de novo review by this Court. Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). When interpreting statutes, courts "ascertain and give effect to the intention of the legislature." Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). That intent is usually self-evident from the words used in the statute. Id. Consequently, courts apply the plain language of a statute unless the terms are ambiguous,[8] Tiller v. Commonwealth, 193 Va. 418, 420, 69 S.E.2d 441, 442 (1952), or applying the plain language would lead to an absurd result.[9] Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). Courts also employ the rules of statutory construction when the plain language of two or more statutes conflict. See, e.g., Wertz v. Grubbs, 245 Va. 67, 70, 425 S.E.2d 500, 501 (1993) (using principles of

---

[8] Ambiguity exists if the text can be "understood in more than one way or refers to two or more things simultaneously [or] when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citation omitted). We find that the text of Code § 2.2-2905(1) is unambiguous, so this exception to the general rule is inapplicable to the case at bar.

[9] The phrase "absurd result" is used "to describe situations in which the law would be internally inconsistent or otherwise incapable of operation." Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004).

statutory construction to resolve an apparent conflict between the unambiguous language of two statutes).

When Code § 2.2-2905(1) is examined in light of the authority granted to the Governor (in the VPA) and the Attorney General (in Code § 2.2-501 et seq.), the reading advocated by the former employees presents an irreconcilable conflict between the statutory authority of the Governor and that of the Attorney General. The Governor is "Chief Personnel Officer" charged with executing the VPA. Code § 2.2-103. Under the VPA's provisions, "[n]o establishment of a position or rate of pay, and no change in rate of pay shall become effective except on order of the appointing authority and approval by the Governor." Code § 2.2-2901(C). Employees covered by the VPA are thus subject to the Governor's direct authority regarding such personnel decisions.

That gubernatorial authority, if the former employees' viewpoint is sustained, is directly contrary to the Attorney General's statutory authority to make personnel decisions relating to the employees of his or her office. This is self-evident from the clear appointment power in Code §§ 2.2-501 and -502, coupled with the Attorney General's authority to set "such salaries among such persons as he deems proper." Code § 2.2-502. Apart from the legislature's funding prerogatives, there

are no statutory restrictions on these powers granted to the Attorney General.

Thus, the former employees' proffered reading of the pertinent statutes would give the Governor and the Attorney General simultaneous, unrestricted authority to create positions, determine salaries, and appoint personnel for the Office of the Attorney General.  This construction creates an unworkable and irreconcilable conflict between the authority of the Governor and that of the Attorney General.  Because such a literal construction of Code § 2.2-3202(A)(i) creates a conflict between statutory provisions, we must turn to the rules of statutory construction to determine the General Assembly's intent and resolve the conflict.  See Moore v. Commonwealth, 155 Va. 1, 11-12, 155 S.E. 635, 638-39 (1930) (using principles of statutory construction to resolve conflict between two code provisions);[10] see also Wertz v. Grubbs, 245 Va. at 70, 425

---

[10] In approaching how to resolve a conflict between two statutes, the Court in Moore cited this language from Golden Valley County v. Lundin, 203 N.W. 317, 319 (N.D. 1925):

> The legislative intention must primarily be determined from the language of the statute.  And if the language is plain, certain and unambiguous, so that no doubt arises from its own terms as to its meaning, then there is no room for interpretation, and the statute must be given effect according to its terms.  But the legislative intention must be sought from the whole act, and not merely from certain parts of it; and where certain provisions of an act are inconsistent

11

S.E.2d at 501 (1993) (same).[11]

When faced with apparently conflicting statutes, this Court applies "a well-established principle of statutory construction. If possible, we must harmonize apparently conflicting statutes to give effect to both."  Phipps v. Liddle, 267 Va. 344, 346, 593 S.E.2d 193, 195 (2004); see also Kirkpatrick v. Board of Supervisors, 146 Va. 113, 125, 136 S.E. 186, 190 (1926) ("where two statutes are in apparent conflict they should be construed, if reasonably possible, so as to allow both to stand and to give force and effect to each.").  Indeed, whenever "a given

> with other provisions of the same act, then it becomes incumbent upon the courts to determine which must prevail in order to carry out the legislative purpose and intention.

Moore, 155 Va. at 11, 155 S.E. at 638.

[11] The principles permitting courts to construe statutes where a literal construction of the statute's plain language results in a "manifest absurdity" are arguably applicable here as well.  When applying the plain language of a statute causes illogical or unworkable conflict either internally or in light of another statute, the plain language is insufficient to determining the statute's meaning.  See Frey v. Jefferson Homebuilders, Inc., 251 Va. 375, 378, 467 S.E.2d 788, 790 (1996).  Language giving simultaneous, unrestricted authority to two elected officials is "absurd" in light of the manifest difficulties implementing, enforcing, and prioritizing conflicting employment decisions of either official.

Some cases analyzing apparent conflicts between statutes rely on the determination of "manifest absurdity" before turning to the rules of statutory construction to resolve the conflict.  See, e.g., Buzzard v. Commonwealth, 134 Va. 641, 653-54, 114 S.E. 664, 667-68 (1922) (harmonizing statutes to avoid a statutory conflict that would lead to an absurd result).  Our case law establishes, however, that this intermediary step is not required where, as in the case at bar, a literal

controversy involves a number of related statutes, they should be read and construed together in order to give full meaning, force, and effect to each."  Ainslie, 265 Va. at 353, 577 S.E.2d at 249; see also Ragan v. Woodcroft Village Apts., 255 Va. 322, 325, 497 S.E.2d 740, 742 (1998) ("We accord each statute, insofar as possible, a meaning that does not conflict with the other statutes.").

Here, the conflict only arises if the VPA applies to employees of the Office of the Attorney General through Code § 2.2-2905(1).  By reading Code § 2.2-2905(1) to encompass both the Attorney General – an officer "for whom the Constitution specifically directs the manner of selection" – and those employed under the Attorney General's authority, the statutory conflict between the powers of the Governor and the Attorney General is avoided.  This construction harmonizes the Code provisions thereby eliminating an otherwise untenable conflict, while giving effect to the statutes establishing the Governor's authority and that of the Attorney General.  The Governor's powers under the VPA are unaffected as to any Commonwealth employees other than employees of the Office of the Attorney General, and the Attorney General's powers are limited to those

---

construction of statutory text creates a direct conflict with another statute.

13

employees and allow recognition of the General Assembly's intent as expressed in Code § 2.2-501, et seq.

Furthermore, this construction gives effect to the General Assembly's intent without causing the Court to usurp the legislature's right to write statutes.  Whenever interpreting and construing a statute, we are mindful that "[c]ourts are not permitted to rewrite statutes."  Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944).  Our construction of Code § 2.2-2905(1) is consistent with our well-settled principles of statutory construction in light of the clear conflict between statutes that would result from a literal reading.

Accordingly, we hold that employees of the Office of the Attorney General, including the former employees, are not covered by the VPA because they are exempt under Code § 2.2-2905(1).  Because the former employees are not covered by the VPA, they are ineligible to receive WTA benefits under Code § 2.2-3202(A)(i).  Consequently, the trial court did not err in sustaining the Attorney General's demurrer and dismissing the amended motion for judgment with prejudice.  We will therefore affirm the trial court's judgment.

Affirmed.

14